**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BBQ Hut, Inc., | No. CV-06-2050-PHX-FJM |
| Plaintiff, | **ORDER** |
| vs. | |
| Maelin Enterprises, LLC, Maelin Patrick, and John Doe Patrick, | |
| Defendants. | |

The court has before it plaintiff's motion for award of attorney fees and related non-taxable expenses (doc. 107), defendants' response (doc. 110), and plaintiff's reply (doc. 111).

**I**

Plaintiff sells barbecues and related products and services under the trade name "BBQ Hut" and a federally registered trademark. In 2004, defendant Maelin Patrick, principal of defendant Maelin Enterprises, LLC, contracted with plaintiff to open and operate a new BBQ Hut store in Mesa, Arizona, and to purchase and operate an existing store in Phoenix. As part of these agreements, plaintiff licensed the use of its marks. In August 2006, plaintiff filed this action, alleging that defendants violated trademark law by continuing to use plaintiff's intellectual property after the licenses had been terminated and that defendants were in default on a promissory note executed to purchase the Phoenix store.

1  Specifically, plaintiff alleged three counts under the Lanham Act, three counts under the
2  equivalent state trademark laws, and two counts under state contract law.

3  On August 24, 2007, plaintiff filed a motion for sanctions against defendants and to
4  compel answers to written discovery (doc. 65).  On September 24, 2007, seeing evidence of
5  foot-dragging on defendants' part, we ordered that defendants had four days to fully and
6  properly respond to written discovery or else default judgment would be entered against them
7  (doc. 72).  Defendants filed a notice of compliance with our order, but plaintiff considered
8  their efforts insufficient and moved for default judgment on October 9, 2007 (doc. 77).  In
9  a status conference on November 30, 2007, we were informed by defendants' counsel that
10 his client Maelin Patrick was incommunicado, had failed to respond to his discovery
11 requests, and was believed to be out of the country.

12 Given defendants' failure to participate in this litigation, we granted plaintiff's motion
13 for default judgment on all counts (doc. 91).  See Minute Entry, Jan. 29, 2008 (doc. 99)
14 (clarifying that default was granted with respect to the entire complaint).  In our order of
15 March 4, 2008 (doc. 104), we directed entry of default judgment and awarded damages for
16 the contract claims in the amount of $15,182.87 (the unpaid principal on the defaulted
17 promissory note), see Complaint ¶ 26 (doc. 1), and injunctive relief for the trademark claims.

18 The time within which to file a motion for attorney fees passed fourteen days after
19 judgment.  Fed. R. Civ. P.54(d)(2)(B)(I); LRCiv 54.2(b)(1).  On April 14, 2008, forty days
20 after judgment, plaintiff's counsel moved for leave to file a motion for fees out of time,
21 admitting his own good-faith error  (doc. 106).  Defendants did not respond.  On May 5,
22 2008, plaintiff lodged the motion for fees that is now before us.  In our order of May 14,
23 2008, (doc. 109), we granted the motion for leave to file out of time pursuant to Rule
24 6(b)(1)(B), Fed. R. Civ. P. (stating that a motion to extend time filed after time has expired
25 may be granted for excusable neglect).

26 Now, in response to the motion for fees, defendants contend that they have been
27 prejudiced by the late filing.  They suggest that a timely motion for fees might have induced
28 them to appeal our March 4, 2008, order directing default judgment, and now the time for

1  appeal has expired. Defendants ask us to reconsider our order granting plaintiff leave to file
2  out of time, or to grant them an extension of time to appeal the default judgment. Both
3  requests are denied.

4  We do not see the connection between defendants' decision whether to appeal the
5  default judgment and plaintiff's post-judgment motion for fees. An award of fees is itself an
6  appealable judgment, apart from the judgment in the underlying action. What is more, we
7  cannot imagine on what grounds defendants would seek to appeal a default judgment to
8  which they essentially consented by their own utter failure to participate in this litigation.
9  In any event, it is too late to challenge plaintiff's motion for leave to file out of time.
10 Defendants had an opportunity to respond to that motion and did not do so. See LRCiv 7.2(I)
11 (stating that failure to file an answering memorandum may be deemed consent to granting
12 a motion). Defendants' request for an extension of time to appeal the default judgment is
13 improperly made and untimely; it had to be made by motion within sixty days of judgment.
14 Fed. R. App. P. 4(a)(1)(A), 4(a)(5)(A)(i).

**II**

16 We now turn to the merits of the plaintiff's motion for attorney fees and related non-
17 taxable expenses, which relies on A.R.S. § 12-341.01 and 15 U.S.C. § 1117. Plaintiff pled
18 two Arizona contract claims, breach of contract and breach of the implied covenant of good
19 faith and fair dealing. Fee-shifting for those two claims is clearly governed by A.R.S. § 12-
20 341.01(a), which permits a discretionary award of fees to the "successful party" in any
21 "contested action arising out of a contract."[1]

22 In deciding whether to award fees under A.R.S. § 12-341.01(a), we consider several
23 factors: (1) the merits of the unsuccessful defense, (2) whether the litigation could have been
24 avoided, (3) whether an award would cause extreme hardship, (4) whether plaintiff
25 completely prevailed, (5) the novelty of the legal issues, and (6) whether an award would

---

[1] Because defendants appeared and, at least initially, denied the allegations of the complaint, this was a "contested action." Morrison v. Shanwick, 167 Ariz. 39, 46, 804 P.2d 768, 775 (1990).

discourage parties with tenable claims from litigating. Associated Indem. Corp. v. Warner, 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985).

Defendants contend that an award of fees would be an extreme hardship. However, the other factors overwhelmingly support an award. Defendants hardly bothered to pursue a defense,[2] and their persistent failure to cooperate with counsel protracted this matter and stalled any chance at settlement. Plaintiff completely prevailed—not, as defendants contend, in the form of a "sanction," Response at 2 (doc. 110)—but by obtaining the relief prayed for in the complaint. As far as we can tell, there were no novel issues in this action, and an award of fees would certainly not discourage future parties from litigating good faith defenses, as defendants lost by *abandoning* their defense. Thus, on balance, we conclude that fees are appropriate under A.R.S. § 12-341.01(a) for the contract claims.

Plaintiff also relies on 15 U.S.C. § 1117(a), which permits an award of fees to the prevailing party "in exceptional cases" under the Lanham Act. "Exceptional" is not statutorily defined, but in this circuit, it refers to cases in which the acts of infringement are "malicious, fraudulent, deliberate, or willful." Derek Andrew, Inc., v. Poof Apparel Corp., No. 07-35048, 2008 WL 2357378, at *5 (9th Cir. June 11, 2008) (quoting Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1023 (9th Cir. 2002)). This is such a case.

Plaintiff alleged that defendants continued to use the BBQ Hut marks for months after defendants themselves terminated the licensing agreements. During this time, while the stores were still held out as BBQ Hut stores, defendants allegedly engaged in questionable business practices, drawing the attention of local media. Complaint ¶¶ 31–45. Plaintiff specifically pled "willful" infringement, id. ¶¶ 52, 57, 60, and upon default, the factual allegations of the complaint, including allegations of willfulness, are taken as true. Derek Andrew, 2008 WL 2357378, at *5. Therefore, plaintiff is entitled to attorney fees under the Lanham Act. Id.; see also Williams Sonoma, Inc. v. Friendfinder, Inc., No. 06-6572, 2007

---

[2] Defendants' motion for summary judgment (doc. 70), which was not in compliance with LRCiv 56.1(a), was dismissed as moot when plaintiff's motion for default judgment was granted (doc. 91).

- 4 -

WL 4973848, at *8 (N.D. Cal. Dec. 6, 2007) ("[F]urther, a trademark defendant's failure to appear alone warrants a finding that the case is 'exceptional' for the purpose of determining entitlement to attorneys' fees.").

In addition to trademark infringement, dilution, and unfair competition under the Lanham Act, plaintiff pled the same causes of action under the common law of torts. As a general matter, "a prevailing party in a case involving Lanham Act and non-Lanham Act claims can recover attorneys' fees only for work related to the Lanham Act claims." Gracie v. Gracie, 217 F.3d 1060, 1069 (9th Cir. 2000). Accordingly, defendants contend that an award of fees based on the trademark claims should be limited to work done on the federal claims.[3] In Gracie, the court held that a fee award should be reduced to reflect work done on non-Lanham Act claims, "unless the court finds the claims are so inextricably intertwined that even an estimated adjustment would be meaningless." Id. at 1071.

We find that an adjustment in this case would indeed be meaningless. Defendants' own motion for summary judgment suggests that the Lanham Act claims and the equivalent common law claims rely on the same contentions and rise and fall together (doc. 70 at 16–17). Thus, it is impossible to differentiate between work done on the two sets of claims. See Gracie, 217 F.3d at 1069. Any extra work occasioned by including the common law claims was likely negligible. Accordingly, we award fees for plaintiff's entire action.

### III

We now turn to establishing a reasonable fee award for this action. Plaintiff seeks $30,232 in attorney fees and $3,321.95 in related non-taxable expenses and has submitted a supporting memorandum (doc. 107) and supporting documentation (doc. 107, exs. 1–4) substantially in compliance with LRCiv 54.2(c)–(d).

---

[3] Presumably, A.R.S. § 12-341.01(a) would not reach the common law tort claims, because those causes of action can arise independent of breach of contract. See Sparks v. Republic Nat'l Life Ins. Co., 132 Ariz. 529, 543–44, 647 P.2d 1127, 1141–42 (1982) (holding that A.R.S. § 12-341.01(a) applies to tort of bad faith but not misrepresentation).

In accordance with LRCiv 54.2(d)(3), plaintiff's supporting documentation includes a task-based itemized statement of fees (doc. 107, ex. 3, pt. 1). We must make specific findings as to the rates and hours that we find reasonable. Gracie, 217 F.3d at 1070 (citing Frank Music Corp. v. Metro-Goldwyn Mayer, Inc., 886 F.2d 1542, 1557 (9th Cir. 1989)). The itemized statement indicates work done by five people (Andre H. Merrett, Rosalind Love, C. Bradley Vynalek, John S. Craiger, and Carla S. Walters), each of whom bills at a different hourly rate. Plaintiff's supporting affidavit (doc. 107, ex. 4) describes the roles and qualifications of Merrett and Craiger. Given this information and our familiarity with the Phoenix legal market, we conclude that their hourly rates ($325–350 and $235–255, respectively) are reasonable.[4] However, because the affidavit says nothing about the qualifications of the other three individuals appearing on the itemized statement, we cannot determine the reasonableness of their rates. See LRCiv 54.2(d)(4)(A). Accordingly, fees attributable to those individuals are excluded from the award.

The task-based itemized statement displays both hours worked and hours billed. Plaintiff's requested fee award is calculated using total hours worked, but we include only hours billed. See Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 1940 (1983) ("Hours that are not properly billed to one's client are not properly billed to one's adversary pursuant to statutory authority." (citation omitted)). Merrett and Craiger billed a total of 79.5 hours. The itemized statement contains adequate description of each billed task. It should be noted that several of the tasks undertaken by plaintiff's counsel—such as drafting motions to compel, to request a status conference, and for default judgment—were occasioned by defendant's own failure to cooperate in this litigation. Having carefully reviewed each itemized entry, we find the billed hours reasonable. Accordingly, we award $24,593 in fees ($325 x 36.4 hrs. + $350 x 20.7 hrs. + $235 x 9.7 hrs. + $255 x 12.7 hrs.).[5]

---

[4] The rates for Merrett and Craiger increased after October 1, 2007.

[5] Or, plaintiff's billed total of $25,380, plus $350 for work on the motion for fees, minus the $1137 billed by Love, Vynalek, and Walters (doc. 107, ex. 3, pt. 1).

We reject in its entirety plaintiff's request for non-taxable expenses, presented in a statement of "costs" (doc. 107, ex. 3, pt. 2).  Non-taxable costs are not recoverable under A.R.S. § 12-341.01, Ahwatukee Custom Estates Mgmt. Ass'n v. Bach, 193 Ariz. 401, 404, 973 P.2d 106, 109 (1999), nor are they under the Lanham Act, Roth v. Naturally Vitamin Supplements, Inc., No. CV-04-2135, 2007 WL 2020114, at *7 (D. Ariz. July 6, 2007).

Plaintiff has included electronic legal research fees in its statement of "costs." Such fees are generally recoverable as attorney fees. Trustees of the Constr. Indus. & Laborers Health & Welfare Trust v. Redlands Ins. Co., 460 F.3d 1253, 1258–59 (9th Cir. 2006); Ahwatukee, 193 Ariz. at 403, 973 P.2d at 108.  However, plaintiff has only described the electronic research fees as "Westlaw and Lexis charges."  Because we have no way of knowing how those fees were incurred, we cannot conclude that they are reasonable.  They are rejected for that reason. Cf. LRCiv 54.2(e)(2)(B) ("Time entries simply stating 'research' or 'legal research' are inadequate and the court may reduce the award accordingly.").

## IV

For the foregoing reasons, **IT IS HEREBY ORDERED GRANTING** plaintiff's motion for award of attorney fees (doc. 107) in the amount of $24,593.

DATED this 3rd day of July, 2008.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge